**UNITED STATES of America, Plaintiff,**

v.

**Jose Luis GARCIA, Defendant.**

Cr. No. 92–88.

United States District Court,
S.D. Iowa.

Sept. 22, 1992.

Cliff Wendel, Asst. U.S. Atty., for U.S.

William A. Price, Des Moines, Iowa, for defendant.

ORDER DENYING UNITED STATES
OF AMERICA'S MOTION FOR
DETENTION

MARK W. BENNETT, United States Magistrate Judge.

I. INTRODUCTION.

In accordance with the Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.*, a detention hearing was held on September 18, 1992 and continued to September 21, 1992. The United States of America was represented by Assistant U.S. Attorney Cliff Wendel. Defendant Jose Luis Garcia was represented by Des Moines attorney William A. Price. Mark Shepard, Deputy U.S. Marshal, and Jack Spicer of the U.S. Probation Office testified on behalf of the government. The government introduced into evidence government's Exhibits 2 and 3. Government's Exhibit 2 was an INS detainer. Government's Exhibit 3 were various police reports from Tucson, Arizona, concerning the Defendant's prior criminal record. The Defendant made a proffer of

evidence through attorney Price pursuant to 18 U.S.C. § 3142(f).[1]

## II. ANALYSIS OF § 3142 OF THE BAIL REFORM ACT OF 1984.

### A. Introduction.

■■ Pursuant to 18 U.S.C. § 3142(e), the judicial officer must determine whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community in deciding whether to grant the government's motion for detention. Detention can be based on a showing either of dangerousness or risk of flight, both are not required. *United States v. Fortna,* 769 F.2d 243 (5th Cir.1985), *cert. denied,* 479 U.S. 950, 107 S.Ct. 437, 93 L.Ed.2d 386 (1986). The standard is "reasonable assurance;" the court cannot order the detention because there are no conditions which would *guarantee* appearance and safety. *United States v. Orta,* 760 F.2d 887, 890–892 (8th Cir.1985). In interpreting the statutory scheme of 18 U.S.C. § 3142, the United States Court of Appeals for the Eighth Circuit stated:

> Consistent with the intent expressed in the legislative history, the statutory scheme of 18 U.S.C. § 3142 continues to favor release over pretrial detention. Section 3142 provides four alternatives from which the judicial officer must choose: (1) release on personal recognizance or unsecured appearance bond, or (2) release subject to certain conditions, or (3) temporary detention to permit, among other things, revocation of conditional release, or (4) pretrial detention. The judicial officer most often will be deciding between the first and the second alternatives. The statutorily mandated progression from one choice to the next is critical: a judicial officer cannot determine that a detention hearing and the possible imposition of pretrial detention is appropriate merely by determining

that release on personal recognizance will not "reasonably assure" the defendant's appearance at trial or "will endanger" the community. The judicial officer must also consider whether one of the codified conditions or any combination of the conditions will "reasonably assure" the defendant's appearance and the safety of the community. The wide range of restrictions available ensures, as Congress intended, that very few defendants will be subject to pretrial detention.

*United States v. Orta,* 760 F.2d 887, 890–891 (8th Cir.1985)

The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including—(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g). *See, e.g., United States v. Townsend,* 897 F.2d 989, 993 (9th Cir.1990).

### B. Risk of Flight.

■ Only if the government establishes by a preponderance of the evidence that no condition or set of conditions under 18

---

1. Such a "proffer" in the context of the Bail Reform Act of 1984 has been defined as: "defense counsel's statement to the judicial officer of what factual data he believed could be established by the testimony of a live witness or witnesses or by documentary evidence." *United States v. Ridinger,* 623 F.Supp. 1386, 1400 n. 12 (W.D.Mo.1985).

U.S.C. § 3142(c) will reasonably assure the Defendant's appearance, can a Defendant be detained before trial. *United States v. Orta,* 760 F.2d 887, 891 (8th Cir.1985).[2] The judicial officer "cannot require more than an objectively reasonable assurance of ... the defendant's appearance at trial." *Orta,* 760 F.2d at 892.

### C. Dangerousness.

The Bail Reform Act of 1984, 18 U.S.C. § 3141, *et seq.* represents "a water shed in the criminal law. It transformed preexisting practice in very significant ways, providing among other things for the pretrial detention of persons charged with certain serious felonies of the ground of dangerousness—a ground theretofore not cognizable." *United States v. Tortora,* 922 F.2d 880, 884 (1st Cir.1990).

■ Only if the government establishes by clear and convincing evidence that no release condition or set of conditions will reasonably assure the safety of the community may the defendant be detained before trial. *Orta,* 760 F.2d at 891.

### III. THE REBUTTABLE PRESUMPTION.

■ Subject to rebuttal by a defendant, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, 21 U.S.C. § 801 *et seq.;* the Controlled Substances Import and Expert Act, 21 U.S.C. § 951 *et seq.;* Maritime Drug Law Enforcement Act, 46 U.S.C.App. § 1901 *et seq.;* or an offense under 18 U.S.C. § 924(c). 18 U.S.C. § 3142(e).[3]

■ Moreover, a grand jury's indictment provides the probable cause required under 18 U.S.C. § 3142(e) to trigger the rebuttable presumption of risk of flight and danger to the community. *See United States v. Quartermaine,* 913 F.2d 910, 916 (11th Cir.1990); *United States v. Suppa,* 799 F.2d 115, 119 (3rd Cir.1986); *United States v. Dominguez,* 783 F.2d 702, 706 n. 7 (7th Cir.1986); *United States v. Contreras,* 776 F.2d 51, 54 (2d Cir.1985); *United States v. Hazime,* 762 F.2d 34, 37 (6th Cir.1985).

■ The rebuttable presumption of § 3142(e) creates a burden of production upon a defendant, not a burden of persuasion. *United States v. Quartermaine,* 913 F.2d at 916; *United States v. King,* 849 F.2d 485, 488 (11th Cir.1988). The purpose of the rebuttable presumption is to shift the burden to a defendant to establish a basis for concluding that there are conditions of release sufficient to reasonably assure that a defendant will not engage in dangerous criminal activity pending trial. *United States v. Jessup,* 757 F.2d 378, 381 (1st Cir.1985). Although most rebuttable presumptions found in the law disappear when any evidence is presented by the opponent of the presumption, the rebuttable presumption of § 3142(e) is not such a "bursting bubble." *United States v. Jessup, supra* at 383. Thus, in order to rebut the presumption, a defendant must produce some evidence; and the Magistrate Judge

---

**2.** The statute does not expressly state the appropriate evidentiary standard necessary to support a finding of propensity for flight, indicating that the preponderance of the evidence standard usually applied in pretrial proceedings is appropriate. *United States v. Orta,* 760 F.2d at 891 n. 20. *See also United States v. Himler,* 797 F.2d 156, 161 (3rd Cir.1986) (listing decisions by other circuits that require a preponderance of the evidence to demonstrate risk of flight.)

**3.** In the legislative history of the Bail Reform Act, the Committee offers a partial explanation of the Act's unique treatment of persons accused of such offenses:

It is well known that drug trafficking is carried on to an unusual degree by persons engaged in continuing patterns of criminal activity. Persons charged with major drug felonies are often in the business of importing and distributing dangerous drugs, and thus, because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism.

S.Rep. No. 225, 98th Cong., 2d Sess. 20, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3203.

*U.S. v. Shea,* 749 F.Supp. 1162, 1166 (D.Mass. 1990).

should still keep in mind the fact that Congress has found that certain drug offenders, as a general rule, pose special risks of flight. *United States v. Jessup, supra* at 384.

Although this court is unable to find any case from the Eighth Circuit Court of Appeals similarly construing the rebuttable presumption of § 3142(e), other circuits have adopted the rationale of *Jessup. See e.g., United States v. Martir,* 782 F.2d 1141, 1144 (2d Cir.1986); *United States v. Diaz,* 777 F.2d 1236, 1237 (7th Cir.1985); *United States v. Fortna,* 769 F.2d 243, 251 (5th Cir.1985), *cert. denied,* 479 U.S. 950, 107 S.Ct. 437, 93 L.Ed.2d 386 (1986); *United States v. Hurtado,* 779 F.2d 1467, 1470 (11th Cir.1985); *United States v. Alatishe,* 768 F.2d 364, 371 (D.C.Cir.1985); *see also U.S. v. Payne,* 660 F.Supp. 288, 290–91 (E.D.Mo.1987), *aff'd,* 822 F.2d 1095 (8th Cir.1987).

■ The court specifically finds that the rebuttable presumption does not apply here because Defendant Garcia was indicted pursuant to 21 U.S.C. § 841(b)(1)(D), a crime for which the maximum term of imprisonment is five years rather than the ten years required for the triggering of the presumption. *See, e.g.,* 18 U.S.C. § 3142(e).

## IV. THE DETENTION HEARING OF SEPTEMBER 18 & 21, 1992.

The court has examined the factors found in 18 U.S.C. § 3142(g) and weighed the evidence according to the standards noted above. The court finds, based upon the grand jury indictment, that there is probable cause to believe that Defendant Garcia has committed an offense prescribed by 21 U.S.C. § 841(b)(1)(D), however, the maximum term of imprisonment does not exceed ten years.

■ Pursuant to the evidence produced at the detention hearing on September 18 & 21, 1992, the court finds that the government has failed to establish by a preponderance of the evidence that Defendant Garcia is a risk of flight.[4] The thrust of the government's argument is that because the Defendant is an alien he is a risk of flight. In *United States v. Townsend,* 897 F.2d at 995–996, the court stated:

> When assessing an alien defendant's ties to the United States, factors to be considered include how long the defendant has resided in this country, whether defendant has been employed in the United States, whether defendant owns any property in this country, and whether defendant has any relatives who are United States residents or citizens. *See, e.g., United States v. Dominguez,* 783 F.2d 702 (7th Cir.1986) (reversing pretrial detention order for Cuban immigrants who had resided in the United States for five years and showed economic and social stability); *United States v. Khashoggi,* 717 F.Supp. 1048 (S.D.N.Y.1989) (releasing on bail the famous Saudi Arabian businessman who owns property and possesses financial ties to the United States); *United States v. Honeyman,* 470 F.2d 473 (9th Cir.1972) (modifying bail requirement for British subject who has been steadily employed in the United States and owns property in the United States).

Furthermore, the fact that "the defendant is an alien may be taken into account, but alienage does not by itself 'tip the balance either for or against detention.'" *Townsend,* 897 F.2d at 994 (citing *United States v. Motamedi,* 767 F.2d 1403, 1408 (9th Cir. 1985)).

■ In assessing the factors set forth in *Townsend,* this court observes that Defendant Garcia has resided in Tucson, Arizona for the past 19 years. His girlfriend, Maria Rodriguez, also resides in Tucson, Arizona, with their five children. They reside in a trailer court which belongs to Defendant Garcia's parents. Additionally,

---

4. At the hearing, the government also established that Defendant Garcia may have failed to appear for a misdemeanor charge in December, 1991. While the evidence on this question is, at best, ambiguous, it appears that Defendant Garcia may have failed to appear with regard to a charge of failing to use a child restraint in a motor vehicle. Defendant Garcia does not appear to have any prior felony arrests or convictions. This possible failure to appear on a misdemeanor does not convince the court that Defendant Garcia is a risk of flight.

the Defendant's parents, four sisters, and one brother also reside in Tucson, Arizona. Defendant Garcia completed the tenth grade at Pueblo High School in Tucson, Arizona. From 1986 to 1990, Defendant Garcia was employed at Eco Craft Masonry, as a laborer in Tucson, Arizona. In *Townsend*, 897 F.2d at 995, the court determined that the term "community" in 18 U.S.C. § 3142 "embraces both the community in which the charges are brought and also a community in the United States to which the defendant has ties." While the Defendant has no ties to any community within the Southern District of Iowa, he clearly has substantial ties to Tucson, Arizona.

Based upon Defendant Garcia's family ties, prior employment history, length of residence in Tucson, Arizona, and community ties to Tucson, Arizona, the court determines that the government has failed in its burden of proof in establishing that Defendant Garcia is a risk of flight.

Pursuant to the evidence produced at the detention hearing on September 18 and 21, 1992, the court finds that the government has failed to establish by clear and convincing evidence that the Defendant is a danger and that no condition or combination of conditions will reasonably assure the safety of any other person and the community.[5]

Therefore, the court concludes that pursuant to 18 U.S.C. § 3142(e), there are reasonable conditions or combination of conditions, pursuant to § 3142(c), which will reasonably assure the safety of other persons and the community and the Defendant's presence at trial. Therefore, the court orders that the government's motion to detain Defendant Garcia, pursuant to 18 U.S.C. § 3142(e), be denied. The court orders that Defendant Garcia be released subject to specific terms and conditions of a separate release order.

This decision will be stayed pursuant to 18 U.S.C. § 3142(d) so that the government and the INS may determine Defendant Garcia's status as an alien in this country. The evidence presently before the court on

this issue supports Defendant Garcia's position that he is a legal non-resident alien. Upon verification of this information with the INS, but in no event no later than ten (10) days from the date of this order, the Defendant shall be released on bond pursuant to the terms and conditions of the separate release order.

IT IS SO ORDERED.

---

**5.** The court did not understand the government to be relying on the danger prong in order to persuade the court that Defendant Garcia should be detained pending trial.