UNITED STATES of America, Plaintiff,

v.

James Allen STENGER, Defendant.

No. 4:07–cr–00228.

United States District Court, S.D. Iowa, Central Division.

March 3, 2008.

Joseph G. Bertogli, Joseph G. Bertogli, Attorney at Law, Des Moines, IA, for Defendant.

Clifford D. Wendel, U.S. Attorney's Office, Des Moines, IA, for Plaintiff.

## ORDER

ROBERT W. PRATT, Chief Judge.

Before the Court is the Defendant, James Allen Stenger's Appeal of the Detention Order issued by United States Magistrate Judge Ross A. Walters. Clerk's No. 45. The Defendant requests

that this Court reverse Judge Walters' order of detention, and requests a hearing on the matter. After examining the Defendant's appeal, the Court finds that a hearing on the matter is not necessary to resolve the issue.[1] Accordingly, the matter is fully submitted.

## I. FACTUAL BACKGROUND

On May 16, 2007, two unidentified persons robbed First Bank in West Des Moines, Iowa. The robbery was captured on video camera. The robbers were both wearing hooded sweatshirts and had bandanas and sunglasses covering their faces. According to witness reports and the video evidence, the robbers used what appears to be a black powder pistol during the commission of the crime. One of the robbers wore a dark gray or black sweatshirt with a distinctive insignia on the chest. The sweatshirt also has paint splashes on one arm. Witnesses at the scene verified the video-tape with respect to the appearance of the sweatshirt. Video cameras also captured a green, two-toned, mid-1990s model pick up truck leaving the alley behind the bank shortly after the robbery.

On June 18, 2007, law enforcement officers responded to a dispute at a hotel. While investigating the dispute, the police encountered the Defendant, along with Dixie Robinson, Michael Knutson, and Nicole Presley. During the investigation, the officers found a black powder pistol wrapped in a coat belonging to Mr. Knutson. At that time, the law enforcement officers did not connect the Defendant or any of the individuals present in the hotel to the May 16th robbery. A month after the incident at the hotel, on July 26, 2007, another bank was robbed in the Des Moines area. Law enforcement officers arrested Dixie Robinson in connection with the robbery. Dixie Robinson admitted her involvement in the July 26th robbery, and identified James Stenger and Mr. Knutson as the perpetrators of the May 16th robbery of the First Bank in West Des Moines.

Subsequently, law enforcement officers searched the Defendant's house and found a sweatshirt in his bedroom that matched the description of the sweatshirt worn by one of the robbers in the May 16th First Bank robbery. The sweatshirt was dark colored, bore an emblem on the chest similar to the emblem in the video, and had distinctive paint splash marks on the sleeve that matched the marks seen in the video. Law enforcement officers also arrested Mr. Knutson in connection with the First Bank robbery. During Mr. Knutson's interrogation, Mr. Knutson claimed that the Defendant had borrowed his black powder pistol and his green, two-toned pick up truck shortly before the May 16th robbery. Law enforcement officers also located another car belonging to Mr. Knutson, which had a bag hidden in the trunk that contained a plastic pistol, bandanas, and rubber gloves.

The Defendant has several prior criminal charges, including six prior felony convictions. His prior charges include robbery, assault, theft, a drug offense, forgery, eluding, and two different escapes. Courts have revoked the Defendant's parole or probation four times in the past. Several of the Defendant's convictions resulted from crimes committed while he was on parole. The Defendant is currently charged with bank robbery,

---

1. The Defendant's appeal clearly sets forth his arguments for reversal of the Magistrate Judge's detention order, and indicates that he relies on the proffers made during the detention hearing. As no new evidence will be submitted, the Court does not believe a hearing is necessary.

in violation of 18 U.S.C. §§ 2113(a) and (d).

## II. STANDARD OF REVIEW

When considering appeals of pre-trial detention orders, a district court reviews the magistrate's decision de novo. *United States v. Maull*, 773 F.2d 1479, 1481 (8th Cir.1985). When reviewing the magistrate judge's detention order, the district court must make the same inquiry regarding a defendant's risk of flight and danger to the community as did the magistrate. *Id.* at 1484.

## III. LAW AND ANALYSIS

Courts have several options regarding whether to release or detain a defendant pending trial for a crime of violence. *See* 18 U.S.C. §§ 3142(a) and (f)(1)(A). A court may release the defendant on personal recognizance, release the defendant under certain conditions, or detain a defendant pending trial. A court may only detain a defendant if it finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). A court may detain a defendant for posing either a risk of flight or presenting a threat to the community; the Government does not need to prove both. *United States v. Leyba*, 104 F.Supp.2d 1182, 1183 (S.D.Iowa 2000). When determining whether to detain a defendant pending trial, courts must engage in a two step inquiry. *United States v. Garcia*, 801 F.Supp. 258, 260 (S.D.Iowa 1992). First, a court must examine whether the defendant poses a substantial flight risk or presents a danger to the community by considering the factors outlined in 18 U.S.C. § 3142(g), and second, the court must consider whether any conditions or combination of conditions of release specified in 18 U.S.C. § 3142(c) will reasonably assure both the defendant's appearance and the community's safety. 18 U.S.C. § 3142(e); *United States v. Orta*, 760 F.2d 887, 891 (8th Cir.1985).

A court may not detain a defendant simply because there are no conditions of release that will "guarantee" the defendant's appearance at trial and the safety of the community. *Orta*, 760 F.2d at 889–90. Rather, a court must release a defendant if conditions of release can be imposed on the defendant that will "reasonably assure" those considerations. *Id.* This ensures that courts only order pretrial detention for "a small but identifiable group of particularly dangerous defendants as to whom neither the impos[i]tion of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons." *Id.* at 891; *see also Leyba*, 104 F.Supp.2d at 1183 (noting that "[t]he Eighth Circuit Court of Appeals has indicated that pretrial detention should be the exception rather than the rule in Federal criminal cases"); *Garcia*, 801 F.Supp. at 260 (stating that "[t]he wide range of restrictions available ensures, as Congress intended, that very few defendants will be subject to pretrial detention.").

### A. *Risk of Flight*

The Court's task is not to determine the Defendant's guilt or innocence at this stage. *See* 18 U.S.C. § 3142(j) (noting that the presumption of innocence remains in effect). Probable cause to believe that the Defendant committed the alleged bank robbery is provided by the Grand Jury's indictment in this case. *Leyba*, 104 F.Supp.2d at 1183. The Government must still prove, however, by a preponderance of the evidence, that there are no conditions or combination of conditions that will rea-

sonably assure the Defendant's appearance at trial. *Garcia,* 801 F.Supp. at 261–62.

As noted above, the first step in the two-step inquiry is to determine whether there is a substantial risk that the Defendant will not appear at trial. The Court must consider several factors when determining whether the Defendant is a flight risk. These factors include: (1) whether the nature and circumstances of the offense are indicative of a flight risk; (2) the weight of the evidence against the Defendant in this regard; and (3) whether the history and characteristics of the Defendant, including mental condition, family ties, employment, community ties, and past conduct demonstrate a risk of flight. *See* 18 U.S.C. § 3142(g); *United States v. Abad,* 350 F.3d 793, 797 (8th Cir.2003).

Consideration of the nature and circumstances of the offense in this case weighs slightly in favor of pre-trial detention. The charged offense in this case, bank robbery including assault or threats with a dangerous weapon, carries a maximum sentence of twenty-five years imprisonment. *See* 18 U.S.C. § 2113(d). Due to the Defendant's considerable criminal history, if convicted, he appears likely to qualify as a career offender under the advisory federal sentencing guidelines, making his suggested sentencing range at or near the statutory maximum. Regardless of the sentence the Court might impose if the Defendant is convicted, there is no possibility of parole in the federal system. Up to this point in Defendant's criminal history, he has only faced sentences of a few years in the state system, a system that provided the possibility of parole. The Defendant has been paroled several times for his past state offenses. The potential penalty the Defendant faces if he is convicted in this case leads the Court to believe there is some incentive for him to attempt to flee.

Turning to the weight of the evidence against the Defendant, as noted above, the Court is not required, nor allowed, to determine the guilt or innocence of the Defendant at this time. The Grand Jury indictment is sufficient evidence for the Court to conclude that there is probable cause to believe the Defendant committed the alleged offense. The Government offered several pieces of evidence that associate the Defendant with the May 16th First Bank robbery. First, the sweatshirt with distinctive paint markings on the sleeve found in his room matches the sweatshirt worn by one of the robbers in the bank's surveillance video. Second, the Defendant's association with a known bank robber, Dixie Robinson, in the July 26th hotel incident, and Dixie Robinson's subsequent statement implicating him as one of the May 16th robbers. Third, the Defendant's association with Michael Knutson, the owner of a black powder pistol, bandanas, and a two-toned green pick up truck, all of which match the distinctive pistol used in the May 16th First Bank robbery, along with Knutson's testimony that the Defendant had borrowed both items immediately preceding the robbery. While the accusations of two alleged bank robbers is weak when taken by itself, the testimony becomes more significant when corroborated by the physical evidence like the sweatshirt found in the Defendant's room.

The Defendant accurately noted during the detention hearing, however, that there is no other evidence in the record indicating the Defendant's guilt. The Defendant asserts that neither his fingerprints or his DNA have been found at the crime scene, on the black powder pistol, in the truck, or on the sweatshirt taken from his room. These are valid points that will no doubt play a factor as the case proceeds. In the end, the Court believes this factor is intertwined with the seriousness of the offense

discussed above, which weighs slightly in favor of detention due to the lengthy penalty the Defendant may face if he is convicted of the crime. The Court does not believe that the evidence presented at the detention hearing, without more, indicates any likelihood of the Defendant fleeing trial.

The Court must also, however, consider the Defendant's history and characteristics. 18 U.S.C. § 3142(g). The statute directs the Court to consider:

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law....

18 U.S.C. § 3142(g). The Court's analysis of the Defendant's history and characteristics leads to a mixed result. The Defendant has successfully completed probation on previous occasions, is not currently on probation or parole, and is a lifelong Iowa resident with family in the area. However, the Defendant's community ties and sporadic success in completing probation and parole must be contrasted with his history of eluding and escape charges, and several past instances of violating probation and parole. In addition, many of the Defendant's prior offenses occurred while he was on parole or probation. That being said, there is no history of the Defendant failing to appear for trial and court proceedings, and the Court believes this is indicative that he will likely appear for trial and other proceedings.

After considering the factors discussed above, the Court agrees with Judge Walters that the Defendant does not appear to be a risk to fail to appear for trial and other court proceedings. Though the Defendant has a history of problems with supervision and fleeing from custody and supervision, he does not have any history of attempting to avoid the legal process. Accordingly, the Court finds that the Defendant is not a risk to flee from trial in this matter, and turns to consideration of the danger he poses to the community.

**B.** *Danger to the Community*

The Government faces a higher evidentiary burden when trying to prove that the Defendant would pose a danger to the community if released, than it does when trying to prove that the Defendant poses a risk of flight. *Garcia,* 801 F.Supp. at 261. In order for the Court to detain the Defendant for posing a danger to the community, the Government must prove he presents a danger to the community if released, and must prove this by clear and convincing evidence. *Id.* (citing *Orta,* 760 F.2d at 891). The Court finds that, despite the increased burden in this regard, the Government has shown that, if Defendant were to be released prior to trial, no condition or combination of conditions imposed on him would reasonably assure the safety of the community.

**1.** *Does the Defendant pose a danger to the community if released?*

Aside from the increased evidentiary burden, the inquiry in which the Court must engage in order to determine the danger that the Defendant poses to the community is the same as the inquiry for determining whether the Defendant is a risk to fail to appear. *See Abad,* 350 F.3d at 797. First, the Court must determine whether the Defendant poses a danger to the community using the 18 U.S.C.

§ 3142(g) factors, and second, the Court must determine whether any of the 18 U.S.C. § 3142(c) conditions can reasonably assure the safety of the community. 18 U.S.C. § 3142(e); *Orta,* 760 F.2d at 891. When evaluating the dangerousness of a defendant, courts may also look to conduct other than the crime with which the Defendant is currently charged. *See, e.g., United States v. Bess,* 678 F.Supp. 929, 933 (D.D.C.1988) ("Evidence of a defendant's dangerousness is in no way limited to evidence of the elements of the crime with which he is charged.").

Much of the analysis is the same for the inquiry regarding risk of flight, which was discussed above. Therefore, the Court will only discuss aspects of this case that were not already addressed. First, the Court finds that the nature and circumstances of the crime that Defendant is charged with, bank robbery, indicates that the Defendant would be a danger to the community if released and weighs in favor of pre-trial detention. The Defendant is charged with using a deadly weapon to rob a bank. In so doing, he did more than put innocent bystanders at risk of physical injury, he endangered their lives. In addition, according to the Defendant's criminal history, this crime, if proven, would demonstrate a dramatic escalation in the Defendant's disregard for the safety of others. The Defendant's prior convictions, aside from a robbery committed approximately 15 years ago, were generally non-violent. This would suggest the possibility that the Defendant is becoming more reckless as he ages and continues to engage in criminal activity, and the nature of the offense is indicative of the Defendant's disregard for the safety of others.

In addition, the nature of the danger to the community that the Defendant poses also weighs in favor of pre-trial detention. 18 U.S.C. § 3142(g). In this case, the Defendant is charged with using a deadly weapon to rob a bank, a crime that put not only his co-conspirators in danger, but also members of the public that happened to be in the vicinity. The Defendant has six prior felony convictions, including a robbery conviction. He also has two misdemeanor convictions for crimes of violence. He has a sporadic work history, a history of substance abuse, and a history of unsuccessful treatment and failed efforts to comply with supervision. Given the Defendant's criminal history, along with the nature of the current charge, the Court agrees with Judge Walters that the Defendant would pose a serious risk to the community if released on his own recognizance pending trial.

2. *Will any condition or combination of conditions reasonably assure the safety of the community?*

 After a court determines that a defendant would pose a danger to the community if released, the court must consider whether any conditions of release might reasonably assure that the defendant will not harm the community. *Maull,* 773 F.2d at 1482. The conditions of release for danger to community are the same as the conditions that may be imposed to prevent a flight risk. 18 U.S.C. § 3142(c). These factors include releasing a defendant to the custody of a person who will be responsible for supervision, requiring a defendant to maintain a job, and requiring the defendant to refrain from using drugs and alcohol, among other things. *Id.*

As noted above, the Defendant has a significant criminal history, including several felony convictions, many of which were committed while Defendant was on parole or probation. While Defendant has offered to submit to the supervision of his sister and her husband, an officer with the Iowa Department of Corrections, and

maintain employment, the Court finds that, given Defendant's history of disregard for conditions of supervision, specifically his history of committing offenses while under supervision, that the Government has proven by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if Defendant were released pending trial. Given the Defendant's criminal history and difficulties with supervision, the Court does not believe the Defendant's sister and her husband, even in conjunction with electronic monitoring, employment and other conditions, are an adequate safeguard for the public. The Defendant's history makes clear that if he wishes to disregard any condition of supervision he will do so, and that he has an inclination to violate supervision by committing other crimes. The Defendant's history is indicative of dangerousness, the current charged offense supports that indication, and his past difficulties in supervisory settings demonstrate that no condition or combination of conditions will reasonably assure the safety of the public if the Defendant is released prior to trial in this matter.

## IV. CONCLUSION

Accordingly, for the reasons discussed above, the Magistrate Judge's order of detention is AFFIRMED. The Defendant shall remain in custody prior to trial in this case.

IT IS SO ORDERED.